IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

FILED BY _____ D.C.

05 AUG 29 PM 3: 46

THOMAS M. GOULD
CLERK, U.S. DISTRICT COURT
W/D OF TN, MEMPHIS

| | |
|---|---|
| ALMA BOYKINS, | ) |
| Plaintiff, | ) |
| v. | ) No. 03-2351 Ma/P |
| SEARS & ROEBUCK, INC., | ) |
| Defendant. | ) |

## MEMORANDUM OPINION
## FINDINGS OF FACT AND CONCLUSIONS OF LAW

From June 20, 2005, through June 22, 2005, this court conducted a bench trial on Plaintiff Alma Boykins's claims against Defendant Sears Roebuck & Co. ("Sears") under 42 U.S.C. § 2000e ("Title VII") and 42 U.S.C. § 1981. Plaintiff sought to prove that she had been discharged in retaliation for complaining to Sears's discrimination hotline and for filing a complaint with the Equal Employment Opportunity Commission ("EEOC"). Boykins also offered evidence that sales commissions she had earned had been wrongfully diverted to white employees. On July 18, 2005, each party submitted its proposed findings of fact and conclusions of law. On July 29, each party submitted a response to the other's proposed findings of fact and conclusions of law. As required by Rule 52 of the Federal Rules of Civil Procedure, the court now sets forth its findings of fact and conclusions of law.

...ment entered on the docket sheet in compliance
                9-6-05
...nd/or 79(a) FRCP on _____

96

## I. Background Facts

Plaintiff, an African-American woman, was employed as a sales associate at the Sears store located at Raleigh Springs Mall in Memphis, Tennessee, from October, 1993 to April, 2001. (JPTO ¶¶ 1-2.)[1] Plaintiff filed a charge of racial discrimination with the EEOC on February 7, 2000, claiming that Sears had failed to promote her to full-time employment status because of her race and that she had been subjected to verbal racial harassment by her co-workers. (Id. ¶ 3.) In October, 2000, and again in November, 2000, Plaintiff also telephoned Sears's internal "hotline" to complain that Ken Parks, her sales manager, was taking commissions from her by "selling on the floor"[2] and that Bob Minor, Sears's manager, was not taking any corrective action. (Tr. 40-43.) On December 1, 2000, the EEOC issued a dismissal and a right-to-sue letter to Plaintiff. (JPTO ¶ 4.)

On May 16, 2000, Plaintiff had processed the purchase of a "giant screen" television by taking the customer's credit card number over the telephone. This purchase eventually resulted in a "charge back," requiring Sears to reimburse credit charges later proven to be fraudulent. (Tr. 504-09, 512; Ex. 17.) On December 8, 2000, Plaintiff was issued a policy violation notice ("write-

---

[1] The court will cite the Joint Pre-trial Order as "JPTO." Unless otherwise noted, the facts stated in Section I are uncontested.

[2] Because Parks was a salaried employee, any sale that he closed would deprive a sales associate, such as Plaintiff, of the opportunity to receive a commission.

2

up") for the sale on May 16, which had resulted in a charge back in excess of $2,000. (Tr. 513-16; Ex. 7.) On February 17, 2001, Plaintiff received another write-up for failing to comply with Sears's policies governing the processing of credit transactions, this time for failing to obtain a customer's signature in processing a sale. (Tr. 178-79; Ex. 15.) Although the prior write-up had been characterized as a "final warning," Plaintiff did not suffer any loss of pay or benefits.

On April 13, 2001, Plaintiff was working in the Electronics Department when she was approached by a woman who wanted to buy a big screen television and other electronic equipment. (Tr. 180; 522.) The customer produced a credit card number written on a piece of paper, explaining that she had just opened an account and had not yet received her new credit card. (Tr. 181-82.) Plaintiff checked the customer's identification and telephoned Credit Central,[3] which she claims was standard practice. (Tr. 183-84.) After receiving authorization from Credit Central, Plaintiff processed the purchase, and the customer left the store with merchandise worth approximately $2,110.85. (Tr. 185, 522.)

Later that day, the same customer returned to the Raleigh Springs store and attempted to purchase an additional piece of electronic equipment. The customer again offered a credit card number on a piece of paper, and this number was different from the

---

[3] Credit Central is centralized clearinghouse for credit purchases at various Sears locations.

3

one used previously. (Tr. 189-90; Ex. 28.) Plaintiff was not suspicious and again proceeded to telephone Credit Central for approval. After a delay, Plaintiff was notified that she would be contacted by someone about the ongoing transaction. (Tr. 65-66.) Thereafter, Wayne Strachner, Sears's Loss Prevention Manager, approached Plaintiff and the customer, while Plaintiff continued to attempt to process the purchase. At some point, the customer left the store, and the transaction was stopped before it could be completed. (Tr. 68.)

Soon afterward, Strachner investigated the two transactions that had occurred on April 13. On April 20, 2001, Plaintiff was notified of her discharge from Sears. At that time, Sears personnel informed Plaintiff that her employment was being terminated for her failure to take proper precautions to protect the store's assets in processing credit transactions. (Tr. 63, 194-97.) Plaintiff contends that the real reason for her discharge was her prior conduct in complaining of the allegedly discriminatory conditions at Sears.

As referenced in her internal hotline complaints, Plaintiff testified that, on certain occasions throughout her employment at Sears, she was forced to share sales commissions with white sales employees. Plaintiff also offered evidence that, on at least one occasion, a customer requested her assistance and was instead directed by Sears's management personnel to a white sales

4

associate. (Tr. 317-18; 325).

## II. Diverted Commissions

To succeed on her claims that her sales commissions were diverted to white employees in violation of § 1981, Plaintiff must first show that 1) she is a member of a protected class, 2) she suffered adverse employment action, 3) she was qualified for the position, and 4) she was replaced by someone outside the protected class or was treated differently from similarly situated members of the unprotected class. Warfield v. Lebanon Correctional Institution, 181 F.3d 723, 728-29 (6th Cir. 1999)(citing McDonnell Douglas, 411 U.S. at 802.) If Plaintiff has established these elements, she is entitled to an inference of discrimination which shifts the burden of production to Sears to articulate a legitimate, non-discriminatory reason for its contested action(s). See id. at 729 (citing McDonnell Douglas, 411 U.S. at 802). If Sears has met its burden, Plaintiff bears the burden of demonstrating, by a preponderance of the evidence, that Sears's proffered reason is a pretext for discrimination. Id.; see also Canitia v. Yellow Freight Systems, 903 F.2d 1064, 1066 (6th Cir. 1990)(citing Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 256 (1981)). "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 143 (2000)(quoting

5

Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981).

In its order granting in part and denying in part Sears's motion for summary judgment, the court found that Plaintiff had stated a prima facie case of race discrimination based on her deposition testimony that, on an unspecified number of occasions, sales commissions that she had rightfully earned were diverted to white sales associates. (See Order, December 8, 2004, at 13-15.) Plaintiff offered essentially the same testimony at trial: that Ken Parks took commissions from her by "selling on the floor" and falsely crediting sales to white associates Tom Land and Mike Cook. (Tr. 28, 41.) In addition, Plaintiff offered 1) a document memorializing a commission granted to Tom Land on a day when he was not scheduled to work, and 2) the testimony of Sears employee Larry Mosby that a customer who requested Plaintiff's assistance was instead directed to a white sales associate. (Ex. 5-6; Tr. 39, 311-24, 386.)

First, Sears offered uncontradicted evidence that Parks was a salaried employee and did not receive commissions on sales that he completed. A commission was "lost" only for those associates who would have made the sales in question instead of Parks. Second, Plaintiff testified that Parks sold on the floor at different times, when various other associates were working. (Tr. 43.) She did not state that Parks sold on the floor only when she or other

6

African-American sales associates were working. Thus, the mere fact that Parks was "selling on the floor" is not evidence of race discrimination in the distribution of sales commissions.

In support of her claim that sales were diverted from her specifically to white employees, Plaintiff offers a receipt and work schedule for April 16, 2001. The receipt credits Land with a sale, although the schedule does not show that he worked that day.[4] In response, Minor and Parks testified that Sears had a commissions policy that would allow a sales associate to receive partial credit for a sale that occurred when he was not working, if he had worked with the customer earlier to sell the item(s) in question. (Tr. 157, 465-67.) Sears offered testimony that this was the reason Plaintiff might have been required to split her commissions with other customers. Sears's evidence of the "split-ticket" commission policy constitutes a legitimate, non-discriminatory reason for crediting to Land and Cook sales in which Plaintiff might have participated. Plaintiff has not produced specific evidence demonstrating that the policy was a pretext for discrimination or that Land or Cook, on this or other occasions, received commissions to which they were not entitled under Sears's commission policy.

Larry Mosby, an associate in Sears's asset protection

---

[4] The document shows three separate designations for employees. By the name of some employees is a scheduled bloc of time, such as "8:00 - 5:00." By the names of other Sears employees are the designations "Off" and "AVAB." Land is shown as "AVAB" on the day in question, and the parties did not distinguish "AVAB" from "Off."

7

department, testified that, on one occasion, a customer who had been helped by Plaintiff on an earlier date returned to Sears and specifically requested Plaintiff's assistance. Rather than paging Plaintiff on behalf of the customer, as was Sears's standard practice, Sears personnel directed the customer to Lamar Culpepper, a white sales associate. (Tr. 311, 324.) Neither Mosby nor Plaintiff, however, can recall whether this incident resulted in an actual sale or commission. Without more specific evidence, therefore, the court cannot conclude that the described conduct constitutes an adverse employment action on the part of Sears.

Plaintiff is not required to remember the precise details of every diverted sales commission she alleges to have occurred. Her vague recollection of one or two isolated events, however, coupled with the general statement that "it happened all the time," is insufficient to support her damages claims for diverted commissions or to demonstrate that Sears's proffered reason for requiring Plaintiff to share commissions with white employees was pretextual. Given the evidence adduced at trial, the more likely explanation for the incidents described by Plaintiff is the application, mistaken or otherwise, of Sears's "split-ticket" policy, not intentional race discrimination.

## III. Retaliation

As with other Title VII claims, retaliation suits are analyzed under the McDonnell Douglas framework.[5] Johnson v. University of Cincinnatti, 215 F.3d 561, 578-79 (6th Cir. 2000). To establish a prima facie case of retaliation, a plaintiff must show that 1) she engaged in protected activity, 2) the defendant knew of the activity, 3) thereafter, the defendant took an employment action adverse to the plaintiff, and 4) there was a causal connection between the protected activity and the employment action. Ford v. General Motors Corp., 305 F.3d 545, 552-53 (6th Cir. 2002)(citing Morris v. Oldham Co. Fiscal Court, 201 F.3d 784, 792 (6th Cir. 2000). Once a plaintiff meets her burden of establishing a prima facie case of retaliation, the burden shifts to the defendant to offer a legitimate, non-discriminatory reason for taking the adverse employment action. Johnson, 215 F.3d at 578-759. Plaintiff must then demonstrate, by a preponderance of the evidence, that the proffered reason was not the true reason for the employment action—i.e., that the reason was a mere pretext for discrimination. Id. (citing Burdine, 450 U.S. at 253, 256). To demonstrate pretext,

---

[5] Plaintiff contends that the testimony that Ken Parks said "I got her now," referring to the discharge of Plaintiff, is direct evidence of discrimination by Sears and takes the case out of the McDonnell Douglas framework. (Tr. 313). Despite Parks's possible boasts to the contrary, Sears established at trial that he did not have the authority to fire Plaintiff. More importantly, to conclude that the statement is evidence of discrimination, the court must make the additional inference that Parks wanted to "get" Plaintiff because of her protected conduct, and not for some other reason. See, e.g., Johnson v. The Kroger Co., 319 F.3d 858, 865 (6th Cir. 2003).

9

the plaintiff is required to show, by a preponderance of the evidence, that the defendant's proffered reason 1) has no basis in fact, 2) did not actually motivate the adverse employment action, or 3) was insufficient to motivate the adverse employment action. See Carter v. University of Toledo, 349 F.3d 269, 274 (6th Cir. 2003); see also Manzer v. Diamond Shamrock Chemicals Co., 29 F.3d 1078, 1084 (6th Cir. 1994).

In support of a causal link between her protected activity and Sears's disciplinary activity, Plaintiff points to the closeness in time between her calls to Sears's complaint hotline and her belated write-up in December, 2000 for a charge back on a transaction that had occurred the previous May. The court cited this evidence in denying Sears's motion for summary judgment on Plaintiff's retaliation claim. (See Order at 21.) At trial, Sears presented testimony that it was not notified of the May charge back until November 1, 2000, and that it then conducted an investigation and attempted to contact the customer in question to investigate the charge back. (Tr. 512-13.) Plaintiff did not offer evidence to the contrary, and the testimony suggests a legitimate reason for the delay in disciplining Plaintiff for the May charge back. Thus, Sears's evidence of reasonable delay in verifying the May, 2000 charge back undermines Plaintiff's claim that her cumulative discipline, which ultimately resulted in her discharge, was a consequence of her internal complaints.

As described above, Plaintiff's discharge occurred after she had received a number of disciplinary sanctions for failing to follow Sears's credit policy. Plaintiff claims that the actions for which she was disciplined and eventually fired were not contrary to Sears's credit policy. She testifies that the standard procedure in conducting credit transactions consisted of four steps: 1) verifying a customer's identification, 2) calling Sears's Credit Central office to verify the customer's credit card number, 3) keying the credit card number into a sales computer, and 4) receiving an approval code. (Tr. 62.) The evidence shows that Plaintiff complied with this procedure on April 13, 2001.

Plaintiff also offers the testimony of two other Sears employees about the procedure to be followed in processing credit transactions. Debra Lewis, a sales counselor at Sears, testified that the four steps described above were to be followed if a customer presented a credit card number on a piece of paper. (Tr. 213-14.) Lewis also testified, however, that a credit card number on a piece of paper would cause her to be concerned and that there are extra procedures available if a sales associate suspects that a customer is attempting to commit fraud. (Tr. 215-16.) Plaintiff offers further testimony by Larry Mosby that he knew of no other employees who had been terminated for accepting a credit card written on a piece of paper. Mosby also testified, however, that a sales associate should be suspicious of a customer who presented

11

a credit card number on a piece of paper. He stated that he would be concerned about a sales associate who had lost more than $2,000 in credit charge backs and that such an associate should be fired. (Tr. 322.) Finally, Bob Minor testified that, during his tenure as Sears's manager, no sales associate processed a sale with a credit card number and incurred a charge back anywhere near the magnitude of those incurred by the Plaintiff. (Tr. 582.)

Although Plaintiff may not have been in violation of an explicit written policy governing the processing of credit transactions, the proof adduced at trial shows that Sears expected its sales associates to exercise discretion to protect Sears's inventory. The facts described above show that Plaintiff, on different occasions, failed to take adequate precautions to prevent credit fraud. The court concludes, therefore, that Plaintiff's repeated failure to exercise discretion in protecting the store's assets is the reason for her discharge and not her prior complaints of discrimination. Thus, Plaintiff has failed to prove by a preponderance of the evidence that Sears terminated her in violation of Title VII and § 1981.

**IV. Conclusion**

For the foregoing reasons, Plaintiff has failed to prove her claims under Title VII and § 1981. This action is DISMISSED, and the clerk is directed to enter judgment in favor of Sears.

So ORDERED this **26th** day of August 2005.

_/s/ Samuel H. Mays, Jr._

SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE

13



# Notice of Distribution

This notice confirms a copy of the document docketed as number 96 in case 2:03-CV-02351 was distributed by fax, mail, or direct printing on September 6, 2005 to the parties listed.

---

Amy Holliman Brown
ARMSTRONG ALLEN, PLLC
80 Monroe Avenue
Ste. 700
Memphis, TN 38103--246

Alma Boykins
1335 Busby Ave.
Memphis, TN 38127

Thomas W. Lewis
ARMSTRONG ALLEN, PLLC
80 Monroe Avenue
Ste. 700
Memphis, TN 38103--246

Florence M. Johnson
LAW OFFICE OF FLORENCE JOHNSON
100 N. Main Building
Ste. 3001
Memphis, TN 38103

Honorable Samuel Mays
US DISTRICT COURT